Filed 6/30/22; Modified and Certified for Publication 7/20/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. TUESDEE DEANN DUNN, Defendant and Appellant. | F083390 (Super. Ct. No. MCR063302) OPINION |

---

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County. Mitchell C. Rigby, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Franson, J. and Peña, J.

Defendant Tuesdee Deann Dunn contends on appeal that her sentence on count 1 must be vacated and her case remanded for resentencing in light of Senate Bill No. 567's (2021–2022 Reg. Sess.) (Senate Bill 567) amendments to section 1170, subdivision (b). We affirm.

## PROCEDURAL SUMMARY

On October 18, 2019, the Madera County District Attorney filed an amended information in case No. MCR063302 charging defendant with assault with a means of force likely to cause great bodily injury ("force-likely assault") (Pen. Code,[1] § 245, subd. (a)(4); count 1) and misdemeanor violation of a protective order (§ 273.6, subd. (a); count 2).

That same day, defendant pled guilty to both counts.

On November 18, 2019, the trial court placed defendant on three years of probation in case No. MCR063302.[2]

On February 11, 2020, a petition was filed to revoke defendant's probation in case No. MCR063302. It alleged that defendant had failed to report monthly as directed by her probation officer. Defendant admitted the allegation. Her probation was revoked and reinstated for a period of three years.

On March 17, 2020, a second petition to revoke defendant's probation in case No. MCR063302 was filed. The petition alleged that defendant had committed petty theft (§ 459.5), which violated the term of her probation requiring her to obey all laws. Defendant admitted the violation and her probation was revoked and reinstated for a period of three years.

---

[1]    All statutory references are to the Penal Code unless otherwise noted.

[2]    During this proceeding, the trial court also sentenced defendant in case No. MCR060039, after a violation of probation. The charges at issue here, in case No. MCR063302, were the basis for the violation of probation allegation in case No. MCR060039.

2.

On April 27, 2021, a third petition to revoke defendant's probation in case No. MCR063302 was filed. The petition alleged that defendant violated the term of her probation requiring her to obey all laws by: (1) committing disorderly conduct (§647, subd. (f)); (2) possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)); and (3) possessing paraphernalia used to smoke or ingest a controlled substance (Health & Saf. Code, § 11364, subd. (a)). The petition further alleged that defendant failed to report to her probation officer as required by the terms of her probation and that she had violated the term prohibiting use or possession of a controlled substance because her urine sample tested positive for THC and amphetamine.

On June 11, 2021, the trial court held a contested hearing regarding the third probation revocation petition in case No. MCR063302. The trial court found that defendant had violated her probation by failing to obey all laws and by not reporting to her probation officer as alleged in the petition. The trial court found there was insufficient evidence supporting the allegation that defendant's urine test was positive, but found that she had nonetheless violated the probation term prohibiting controlled substance use or possession because she had been found in possession of methamphetamine and amphetamine paraphernalia. At sentencing, the trial court revoked defendant's probation and declined to reinstate it. The trial court imposed four years (the upper term) on count 1 (force-likely assault); and 125 days in county jail, with 125 days' credit for time served, deemed time served, on count 2 (misdemeanor violation of a protective order).[3]

On September 29, 2021, defendant filed a notice of appeal in case No. MCR06332.

---

[3]    The trial court also revoked defendant's probation in case No. MCR060039. In that case, her probation was revoked and not reinstated and she was sentenced to county jail with credit for time served.

## FACTS[4]

### *Count 1—Felony Force-Likely Assault*

Defendant was married to B.O and they had children together. B.O.'s previous wife was J.S. On May 2, 2019, defendant arrived at J.S.'s residence for reasons unknown to J.S. and J.S. told defendant to leave. After J.S. told defendant to leave a second time, defendant lunged at J.S. and they began struggling and hitting each other. J.S. pushed defendant away and saw a knife in defendant's hand. J.S immediately grabbed the knife from defendant and cut her right thumb in doing so.

### *Count 2—Misdemeanor Violating a Court Order*

Defendant had previously been served with a criminal protective order. On June 7, 2019, while it was in effect, B.O. went to defendant's father's home to pick up their children. Defendant was outside the residence waiting for B.O. When he put their children in his car, defendant demanded the children. B.O. refused and drove away. Defendant closely followed B.O. in her vehicle and told B.O. when they arrived at the children's daycare that she would follow them into the daycare. B.O. called the police to report defendant's violation of the protective order.

## DISCUSSION

Defendant contends the trial court's aggravating circumstances findings fail to meet the requirements of amended section 1170, subdivision (b), because the aggravating circumstances relied upon by the trial court—(1) defendant had numerous prior convictions, (2) she was on probation when she committed the charged offenses, and (3) her prior performance on probation was unsatisfactory—were not stipulated to by defendant or proven true beyond a reasonable doubt, and the record does not show that the trial court would have imposed the upper term without these aggravating circumstances.

---

[4]     All facts are from the probation report.

The People first contend that the trial court's sentence to the upper term on count 1 complies with Senate Bill 567's amendments to section 1170, subdivision (b)(3), because the probation officer's report was a certified record of defendant's prior convictions and contained stipulations by defendant that prove the facts underlying all three of the trial court's aggravating circumstances. As we explain below, a probation report is not a certified record of conviction, and section 1170, subdivision (b)(3) does not permit stipulations by the defendant. However, two of the trial court's aggravating circumstances findings were not made in error because the record contains certified records of defendant's prior convictions and stipulations by defendant, outside of the probation officer's report.

The People alternatively contend that any error was harmless under *People v. Sandoval* (2007) 41 Cal.4th 825, 838–839 (*Sandoval*) because "the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true [the relied upon] aggravating circumstance had it been submitted to the jury …." (*Sandoval*, at p. 839). They further argue that any error was harmless because Senate Bill 567 does not require a minimum number of aggravating circumstances, so as long as a jury could have found a single aggravating circumstance true beyond a reasonable doubt, according to *People v. Flores* (2022) 75 Cal.App.5th 495, 521 (*Flores*). However, as we explain below, we disagree with *Flores* that *Sandoval* controls in this context. Instead, to find that the error was harmless we would have to conclude: (1)(a) beyond a reasonable doubt that the jury would have found beyond a reasonable doubt that the facts underlying at least one aggravating circumstance was true and (1)(b) that there is no reasonable probability the jury would not have found the remaining aggravating circumstance(s) true beyond a reasonable doubt, or if all circumstances are not found true according to their respective standards, (2) that there is no reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating

5.

circumstances provable from the record as determined in the prior steps.[5]  Applying this standard, we conclude the trial court's error was harmless.  We affirm.

### A.  Background

When selecting the upper term on count 1, the trial court relied on the probation officer's recommendation and found three aggravating factors:  (1) defendant had numerous prior convictions, (2) defendant was on probation at the time the charged offenses were committed, and (3) her prior performance on probation was unsatisfactory.  The trial court stated at sentencing, "with regards to circumstances in aggravation … the defendant's prior convictions are numerous, was on probation when the crime was committed, and her prior performance on probation was unsatisfactory."  The probation officer's report indicated that defendant was on probation at the time she committed her offenses and also identified defendant's criminal history, which included six prior misdemeanor convictions and 11 prior probation violations.

### B.  Law

On October 8, 2021, Senate Bill 567 was signed into law.  It amends the determinate sentencing law, section 1170, subdivision (b), which delineates the trial court's authority to impose one of three statutory terms of imprisonment, known as the lower, middle, or upper terms, by making the middle term the presumptive sentence for a term of imprisonment, unless certain circumstances exist.  (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).)  Effective January 1, 2022, under the newly amended law, the trial court may impose an upper term sentence only where there are circumstances in aggravation, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or a trial court if the defendant has consented to a court trial.  (*Ibid*.)

---

[5]  In order to reach the second step, the reviewing court must conclude beyond a reasonable doubt that the jury would have found at least one aggravating circumstance true beyond a reasonable doubt.  Otherwise, the sentence violates the Sixth Amendment.

Also, under section 1170, subdivision (b)(3), the trial court, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) Under amended section 1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

### C. Analysis

Senate Bill 567 went into effect on January 1, 2022. Absent evidence to the contrary, the Legislature intends amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments are not yet final on the amendment's operative date. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307–308 [discussing *In re Estrada* (1965) 63 Cal.2d 740]; *People v. Brown* (2012) 54 Cal.4th 314, 323.) The "consideration of paramount importance" is whether the amendment lessens punishment. (*Estrada*, at p. 744.) If so, the "inevitable inference [is] that the Legislature must have intended that the new statute" apply retroactively. (*Estrada*, at p. 745.) As Senate Bill 567's amendments to section 1170, subdivision (b), lessen punishment, and there is no indication that the Legislature intended it to apply prospectively only, the new law must be retroactively applied. Therefore, the amendment to section 1170, subdivision (b), applies to all cases not final on Senate Bill 567's effective date. (*Estrada*, at pp. 745–746; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

As defendant contends, her case was not final on January 1, 2022, and she was sentenced to the upper term on count 1 under former section 1170. We agree. Defendant is entitled to the benefit of Senate Bill 567. Here, defendant's sentence to the upper term on count 1 is not consistent with the requirements of Senate Bill 567's amendment to section 1170, subdivision (b), because the record does not reflect that the aggravating

circumstances were all proven by certified records of defendant's prior convictions, admitted by defendant, or proved beyond a reasonable doubt.

### *Certified Records of Defendant's Prior Convictions*

The People contend that remand is not required because defendant's sentence to the upper term on count 1 in case No. MCR063302 meets the requirements of amended section 1170, subdivision (b)(3). They contend that under section 1170, subdivision (b)(3), "the sentencing court may rely upon … certified records of a defendant's prior conviction in selecting the sentence to impose without submitting the issue to a jury," and that defendant's probation officer's report was a certified record that established all three of the aggravating circumstances that the trial court relied upon— (1) defendant's numerous prior convictions, (2) that she was on probation at the time the charged offenses were committed, and (3) that her prior probation performance was unsatisfactory.

First, the People are mistaken in their assertion that defendant's probation report is a certified record of conviction. It is not. Here, however, during the contested hearing on defendant's third probation violation in this case, the trial court admitted into evidence a certified copy of defendant's criminal history report.[6] As the trial court, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury," the first aggravating circumstance that the trial court relied upon, that defendant had numerous convictions, meets the requirements of section 1170, subdivision (b)(3). Accordingly, there was no

---

[6] While the People's Exhibit 1 is not included in the record on appeal, during the contested hearing, the prosecution stated, "Your honor, at this time I would like to admit into evidence a certified copy of the defendant's criminal history report. I've previously shown it to the defense." The trial court responded, "All right. It will be admitted as Exhibit 1."

error in the trial court's reliance upon the aggravating circumstance of defendant's numerous prior convictions.

### ***Stipulations by Defendant***

The People also argue that under section 1170, subdivision (b)(3), "the sentencing court may rely upon the defendant's own stipulations … of a defendant's prior conviction in selecting the sentence to impose without submitting the issue to a jury." The People are also mistaken that subdivision (b)(3) of section 1170, permits stipulations by the defendant to prove prior convictions. Stipulations by the defendant are permitted to prove aggravating circumstances, however, under subdivision (b)(2) of amended section 1170.

Here, defendant stipulated to the violations as pled in the February 11, 2020, and March 17, 2020, probation revocation petitions in this case. On February 14, 2020, defendant admitted violating the terms of her probation. On March 19, 2020, defendant pled guilty to shoplifting (§ 459.5) and admitted that committing this offense violated the terms of her probation, which required her to obey all laws.[7] Accordingly, the third aggravating circumstance relied upon by the trial court, that defendant's prior probation performance was unsatisfactory, meets the requirements of section 1170, subdivision (b)(2), because the facts underlying the aggravating circumstance have been stipulated to by defendant. (§ 1170, subd. (b)(2).) Accordingly, there was no error in the trial court's reliance upon the aggravating circumstance that defendant's prior performance on probation was unsatisfactory.

---

[7]    The probation officer's report contains probation violations from cases other than case No. MCR063302. However, as the transcripts of the hearings for defendant's two prior probation violations in this case, from February 14 and March 19, 2020, were included in the trial court's record here, we conclude that the trial court was referring to these two probation violations when it stated that one of the aggravating circumstances it relied upon in this case was defendant's prior unsatisfactory performance on probation.

9.

### *Unproved Aggravating Circumstance*

Here, the facts underlying the second aggravating circumstance cited by the trial court, that defendant was on probation at the time that the charged offenses were committed, were not admitted by defendant or presented to or found true by the jury as required by section 1170, subdivision (b)(2).[8]  Accordingly, as section 1170 requires all aggravating circumstances relied upon by the trial court to meet the requirements of section 1170, subdivision (b)(2) or (3), unless imposition of the upper term on count 1 was harmless, the sentence must be vacated and the matter must be remanded to the trial court for resentencing in compliance with section 1170, subdivision (b).

### *Harmless Error*

The People contend that any error by the trial court was harmless, relying on *Sandoval*[9] for the proposition that *Cunningham* harmless error applies to amended section 1170.  They argue that an appellate court properly finds *Cunningham* harmless error in this situation if it "concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true [the relied upon] aggravating circumstance had it been submitted to the jury …." (*Sandoval*, *supra*, 41 Cal.4th at p. 839; accord *People v. Wilson* (2008) 44 Cal.4th 758, 812–813 [where the trial judge mentioned the victim's vulnerability in sentencing a defendant to an upper term, any *Cunningham* error was harmless because the jury would have found

---

**8**  In the following harmless error discussion, we refer to section 1170, subdivision (b) "error."  However, we note that at the time the trial court sentenced defendant, it correctly applied the law.  Accordingly, while we refer to section 1170, subdivision (b) "error," we are mindful that the trial court complied with the applicable law at the time of sentencing.

**9**  *Sandoval*, as we explain in more detail below, considered the standard for harmless error in the context of *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) error—where a sentence in excess of the statutory maximum sentence was imposed under California's former determinate sentencing law without submitting the facts authorizing such a sentence to a jury.

10.

beyond a reasonable doubt that the victim was vulnerable or that appellant isolated the victim].)  They further contend that although Senate Bill 567 requires that the jury find true the facts underlying the aggravating circumstance, Senate Bill 567 does not require the court to rely on a minimum number of aggravating circumstances.  For this proposition they rely on *Flores*, which applied the harmless-beyond-a-reasonable-doubt standard of harmless error from *Chapman v. California* (1967) 386 U.S. 18 as adapted to the context of violations of the Sixth Amendment right to a jury trial on aggravating circumstances by *Sandoval*.  (*Flores*, *supra*, 75 Cal.App.5th at pp. 500–501.)

Flores articulated the harmless error standard in the Senate Bill 567 error context as follows:  " '[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true *at least a single aggravating circumstance* had it been submitted to the jury,' the error is harmless." (*Flores*, *supra*, 75 Cal.App.5th at p. 500, italics added.)  We respectfully disagree with the People and *Flores* that *Sandoval* applies in this context.  A reviewing court concluding beyond a reasonable doubt that the jury would have found the facts underlying *a single circumstance in aggravation* true beyond a reasonable doubt is insufficient to conclude that any error under section 1170, subdivision (b) was harmless.

To explain our disagreement with *Flores*, we consider the origin of the harmless error standard it applied.  In *Cunningham*, the Supreme Court held that California's determinate sentencing law (as it existed from 1977 to 2007) violated the Sixth Amendment right to a jury trial because it permitted a trial judge to determine facts (other than a prior conviction) that would allow imposition of a sentence in excess of the statutory maximum.[10]  (*Cunningham*, *supra*, 549 U.S. at pp. 275–276.)  As *Cunningham* explained, the Supreme Court had long held that any fact that permitted imposition of a

---

**10**     In the Sixth Amendment context, the statutory maximum " 'is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.' " (*Cunningham*, *supra*, 549 U.S. at p. 275.)

11.

sentence beyond the statutory maximum had to be proved to a jury beyond a reasonable doubt. (*Id*. at p. 281.) Under the California determinate sentencing law, a statutory presumption existed that " '[t]he middle term [would] be selected unless imposition of the upper or lower term [was] justified by circumstances in aggravation or mitigation.' " (*Id*. at p. 278.) Under the then-existing statutory scheme, those circumstances in aggravation or mitigation—and the underlying facts related to those circumstances— were to be determined by the trial court, not the jury. (*Ibid*.) The Supreme Court therefore determined that the imposition of an upper term without having the facts underlying the aggravating circumstances proved to a jury beyond a reasonable doubt violated the Sixth Amendment. (*Id*. at p. 293.)

In *Sandoval*, our Supreme Court considered whether an upper-term sentence imposed pursuant to the pre-*Cunningham* determinate sentencing law—i.e., imposed based on judicial findings of fact on circumstances in aggravation—was harmless error under the Sixth Amendment. (*Sandoval*, *supra*, 41 Cal.4th at p. 837.) It explained that the trial court had relied upon multiple aggravating circumstances, none of which had been proved to a jury, admitted by the defendant, or based on the fact of a prior conviction. (*Id*. at pp. 837–838.) The upper-term sentence therefore violated the defendant's Sixth Amendment rights under *Cunningham*. The *Sandoval* court then considered whether the violation was harmless. To that end, it articulated the following standard: "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval*, at p. 839.) In the Sixth Amendment context, the issue was whether the "defendant [was] *eligible* for the upper term"; the trial court's consideration of additional factors not proved to a jury was not a federal constitutional question. (*Sandoval*, at p. 839.)

12.

As noted, in *Flores*, the Court of Appeal for the First District, Division Three extended the standard for harmless error applied in the Sixth Amendment context in *Sandoval* to section 1170, subdivision (b)(2) error.[11] (*Flores*, *supra*, 75 Cal.App.5th at pp. 500–501.) The Court of Appeal for the Fourth District, Division One disagreed with *Flores* on that point. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465–468 (*Lopez*).)

The court in *Lopez* agreed with *Flores* that section 1170, subdivision (b)(2) error is subject to a harmless error analysis: "[W]here a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial …." (*Lopez*, *supra*, 78 Cal.App.5th at p. 465.) But *Lopez* disagreed with *Flores* on the correct standard for harmlessness. Instead of the *Sandoval* harmless error standard, the *Lopez* court applied the following two-part standard for harmlessness: First, "[i]n order to conclude that the trial court's reliance on improper factors that were not found true by a jury[,] … admitted by [the defendant, or based on certified records of conviction] was not prejudicial, [the reviewing court] would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b))." (*Lopez*, at pp. 465–466.) According to *Lopez*, if that conclusion is made, the defendant has suffered no prejudice. (*Id.* at p. 467 & fn. 11.) If not, the reviewing court "then consider[s] the second question, which is whether [it] can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836 [(*Watson*)], that the trial court

---

[11]    The *Flores* court did not explain why it concluded that the harmless error test applied in *Sandoval* applies in this context.

would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez*, at p. 467, fn. 11.)

Lopez reasoned it is not enough that the reviewing court conclude that a trial court was *permitted* to impose the upper term because the jury would have found true a single aggravating circumstance beyond a reasonable doubt; whether the trial court *could have* imposed the upper term did not completely resolve the issue. (*Lopez*, *supra*, 78 Cal.App.5th at p. 467.) Instead, when a reviewing court concludes beyond a reasonable doubt that a jury would have found true fewer than all the aggravating circumstances beyond a reasonable doubt, it must still ask whether it is reasonably probable the trial court "*would have exercised its discretion*" to impose a sentence less than the upper term in the absence of the unproved aggravating circumstance(s). (*Ibid*.)

We agree with the *Lopez* court that a reviewing court finding beyond a reasonable doubt that the jury would have found a single aggravating factor true beyond a reasonable doubt is insufficient to conclude that the error was harmless. In other words, we disagree with *Flores* that *Sandoval* is applicable in this context. We further agree that the second step of the *Lopez* analysis—considering whether the trial court would have imposed a lesser term in absence of the aggravating circumstances not provable on the record before the reviewing court—is necessary. To find that section 1170, subdivision (b) error is harmless when fewer than all of the circumstances relied upon by the trial court could have been proved to the jury, we must determine whether the trial court would nevertheless have imposed the upper term based on the remaining aggravating circumstances.

14.

Despite our agreement with *Lopez* on the majority of the standard it articulated, we are unconvinced that the *Chapman* standard of harmless error—applicable to errors implicating federal constitutional rights—must be applied to *all* aggravating circumstances in the *Lopez* court's first step. *Lopez* does not provide a clear explanation for why the *Chapman* standard for harmless error applies to all aggravating circumstances. Indeed, the only citation that the *Lopez* court provides for the proposition that *Chapman* applies to every factor is citation to section 1170, subdivision (b), itself. While *Sandoval* directs that at least one aggravating factor must be proved to the *Chapman* harmless error standard to satisfy the Sixth Amendment (i.e., for it to be *permissible* for the trial court to impose the upper term consistent with the Sixth Amendment), ordinary errors of state law are subject to review pursuant to *Watson*, *supra*, 46 Cal.2d 818.[12] (*People v. Breverman* (1998) 19 Cal.4th 142, 171 [when a state statutory right to a jury determination is violated, such error "is state law error alone, and thus subject, under article VI, section 13 of the California Constitution, to the *Watson* harmless error test"; "the state-created right to jury determination" does not implicate federal due process interests].)

We note that the *Chapman* standard of harmless error is compelled when an element of an offense or a sentencing factor necessary to impose a sentence above the statutory maximum is not presented to the jury. (*Washington v. Recuenco* (2006) 548 U.S. 212, 220 [firearm enhancement sentencing factor harmless error is decided pursuant to *Chapman*]; *People v. French* (2008) 43 Cal.4th 36, 52–53 [applying only *Chapman*

---

[12] The test under *Watson* is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.) In this context, the question for the reviewing court would be whether there is a reasonable probability that the trial court would not have found the aggravating circumstance(s) true beyond a reasonable doubt.

where the trial court imposed the upper term based on *one* aggravating circumstance and that circumstance was not proved to the jury].) A fact that is *necessary* to impose a sentence above the statutory maximum must be proved to a jury beyond a reasonable doubt. However, as *Sandoval* has made clear, when multiple aggravating circumstances not proved to the jury are relied upon by a trial court in imposing the upper term, the reviewing court must only conclude beyond a reasonable doubt that *one* of those circumstances would have been found true by the jury beyond a reasonable doubt to avoid offending the Sixth Amendment. (*Sandoval*, *supra*, 41 Cal.4th at p. 839 [so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury].) Accordingly, one aggravating circumstance must be reviewed pursuant to *Chapman*, but the remaining aggravating circumstances involve only a state-created right to a jury trial that must be reviewed pursuant to *Watson*.

In sum, we think the correct standard for harmless error lies between the standards articulated in *Flores* and *Lopez*; *Flores* sets too low a standard for harmlessness and *Lopez* too high. We instead apply a version of the standard articulated in *Lopez*, modified to incorporate *Watson* in the first step: The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt[13] and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a

---

**13** Alternatively, this step is satisfied if the trial court found defendant's numerous or increasingly serious prior convictions to be an aggravating circumstance based on a certified record of conviction, or defendant admitted the facts underlying an aggravating circumstance.

reasonable doubt. If the aggravating circumstances would have been proved to the respective standards, any error was harmless. If not, we move to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, we vacate the sentence and remand for resentencing consistent with section 1170, subdivision (b).

With that standard in mind, we revisit the aggravating circumstances relied upon by the trial court. Here, as discussed above, there was no error as to the first aggravating circumstance, that defendant had numerous convictions, because it met the requirements of section 1170, subdivision (b)(3) permitting the trial court to rely on certified records of defendant's prior convictions. There was also no error, as discussed above, as to the trial court's reliance on the third aggravating circumstance, that defendant's prior performance on probation was unsatisfactory, because defendant admitted two prior probation violations in this case. These admissions met the requirements of section 1170, subdivision (b)(2), that aggravating circumstances relied upon by the court must be stipulated to by defendant or proven true beyond a reasonable doubt by a jury. Accordingly, we need not determine beyond a reasonable doubt whether the jury would have found any one aggravating circumstance true beyond a reasonable doubt.[14]

We must next determine whether there is a reasonable probability that the jury would not have found the remaining aggravating circumstance true beyond a reasonable doubt. Here, the jury did not make a specific finding as to the facts underlying the second aggravating circumstance cited by the trial court, that defendant was on probation

---

[14] Because there was no error by the trial court in relying upon the first and third aggravating circumstances, we need not apply the *Chapman* harmless error standard to the remaining aggravating circumstance. We can instead apply *Watson*, as the requirements of the Sixth Amendment have already been met.

17.

at the time the charged offenses were committed. However, the record shows that defendant was on probation in case No. MCR060039 at the time she committed the charged offenses in case No. MCR063302. During defendant's October 18, 2019 hearing in case Nos. MCR060039 and MCR06332, defense counsel stated, "[MCR]060039 is the separate violation of probation case. [MCR]063303 was consolidated with [MCR]063302."[15] During that hearing, defendant pled guilty to counts 1 and 2 in case No. MCR063302. At the sentencing hearing on November 18, 2019, the trial court described case No. MCR060039, stating, "And in MCR060039, a violation of probation matter, the underlying offense being a misdemeanor violation of Penal Code Section 243, subdivision (b) in Count 1; and in Count 2, Penal Code Section 273.6, subdivision (a)." The trial court then revoked defendant's probation in case No. MCR060039 and reinstated it for a period of three years from October 5, 2018, as well as ordered a period of confinement in county jail with credit for time served. It then sentenced defendant in case No. MCR0603302 on counts 1 and 2 to probation for a period of three years. We conclude that based on the record a jury would have assessed the facts underlying the second aggravating circumstance, that defendant was on probation at the time she committed the charged offenses, in the same manner as the trial court. Accordingly, we conclude that there is not a reasonable probability the jury would not have found the remaining aggravating circumstance true beyond a reasonable doubt.

As the first and third aggravating circumstances met the requirements of section 1170, subdivision (b)(2) and (3), and there is not a reasonable likelihood the jury

---

**15** Case No. MCR063302 originally had only one count (§ 273.6), and case No. MCR063303 had only one count (§ 245, subd. (a)(4)). When the two cases were consolidated as case No. MCR063302, the section 245, subdivision (a)(4) charge became count 1, and the section 273.6 charge became count 2 in the amended information for case No. MCR063302.

would not have found the second aggravating circumstance true beyond a reasonable doubt, the error was harmless.  We affirm defendant's sentence.

## **<u>DISPOSITION</u>**

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TUESDEE DEANN DUNN,<br><br>    Defendant and Appellant. | F083390<br><br>(Super. Ct. No. MCR063302)<br><br>**ORDER MODIFYING OPINION AND GRANTING REQUEST FOR PUBLICATION**<br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on June 30, 2022, be modified as follows:

1.      On page 2, the first paragraph beginning "Defendant Tuesdee Deann Dunn" is deleted and replaced with the following paragraphs:

> Defendant Tuesdee Deann Dunn contends on appeal that her sentence on count 1 must be vacated and her case remanded for resentencing in light of Senate Bill No. 567's (2021–2022 Reg. Sess.) (Senate Bill 567) amendments to Penal Code section 1170, subdivision (b).[16]  We conclude that the sentence on count 1 was not imposed in compliance with section 1170, subdivision (b), but that the error was harmless.  We therefore affirm.
>
> This matter turns on the appropriate standard for harmless error review in the Senate Bill 567 context.  Two other published opinions have reached this question, *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*) and *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*), each offering a different answer.  We offer a third answer which falls between the other two.

2.      On page 2, in the first paragraph of the procedural summary, the text "Pen. Code," and footnote 1 are deleted.

---

[16]    All statutory references are to the Penal Code unless otherwise noted.

3. On page 3, in the third paragraph, the text "MCR06332" is modified to read "MCR063302."

4. On page 4, in the first sentence of the first paragraph, the text "B.O and they had children together" is modified to read "B.O. and they had children together."

5. On page 4, in the sixth sentence of the first paragraph, the text "J.S immediately grabbed" is modified to read "J.S. immediately grabbed …."

6. On page 5, in the second sentence of the first paragraph, the text "and section 1170, subdivision (b)(3) does not permit stipulations by the defendant" is modified to read, "and section 1170, subdivision (b)(3) contains no provision regarding stipulations by the defendant."

7. On page 5, after the first sentence of the second paragraph, the citation "(*Sandoval*, at p. 839)." is modified to read, "(*Sandoval*, at p. 839.)"

8. On page 5, in the second sentence of the second paragraph, the text "*People v. Flores* (2022) 75 Cal.App.5th 495, 521 (*Flores*)" is modified to "*Flores*, *supra*, 75 Cal.App.5th at p. 521."

9. On page 5, in the fourth sentence of the second paragraph, the text "or if all circumstances are not found true according to their respective standards," is modified to read, "or if at least one aggravating circumstance would have been found true pursuant to the standard set out in part (1)(a), but all aggravating circumstances would not have been found true to the standard set out in part (1)(b) …."

10. On page 6, the second full sentence of the first partial paragraph, reading "We affirm" is deleted.

11. On page 6, in the second sentence of the first paragraph of the section "A. Background," the text " 'with regards to circumstances in aggravation … the defendant's prior convictions are numerous, was on probation when the crime was committed, and her prior performance on probation was unsatisfactory' " is modified to read " 'with regards to circumstances in aggravation … defendant's prior convictions are

2.

numerous, [she] was on probation when the crime was committed, and her prior performance on probation was unsatisfactory.' "

12.    On page 6, in the second sentence of the first paragraph of the section "B. Law," the word "amends" is modified to read "amended."

13.    On page 6, in the third sentence of the first paragraph of the section "B. Law," the text "the trial court may impose an upper term sentence only where there are circumstances in aggravation," is modified to read "the trial court may impose an upper term sentence only where there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term."

14.    On page 8, in the first partial sentence of the page in the paragraph beginning on page 7, the text, "proven by certified records of defendant's prior conviction, admitted by defendant, or proved beyond a reasonable doubt," is modified to read "proved to a jury beyond a reasonable doubt, admitted by defendant, or were circumstances relating to defendant's prior convictions based on a certified record of convictions."

15.    On page 12, in the last sentence on the page, the text "the trial court's consideration of additional factors not proved to a jury was not a federal constitutional question" is modified to read "whether the trial court would have imposed the upper term without consideration of additional aggravating circumstances not proved to a jury was not relevant to a federal constitutional question before the court."

16.    On page 13, the citation following the second sentence of the first paragraph, reading "*People v. Lopez* (2022) 78 Cal.App.5th 459, 465–468 (*Lopez*)" is modified to "*Lopez, supra*, 78 Cal.App.5th at pp. 465–468."

17.    On page 14, in the second sentence of the second full paragraph, the text "*Sandoval* is applicable in this context" is modified to read "*Sandoval* provides a complete standard for harmless error in this context."

18.    On page 16, footnote 13 is deleted and replaced as follows:

[13]    Alternatively, this step is satisfied if the trial court relied upon an aggravating circumstance that relied only upon the fact of defendant's prior

3.

convictions and a certified record of defendant's convictions was admitted, or defendant admitted the facts underlying an aggravating circumstance.

Again, as noted in footnote 5, step (1)(a) or one of its two alternatives must be satisfied to avoid offending the Sixth Amendment as described in *Cunningham* and *Sandoval*. If not, the error is not harmless; the sentence must be vacated and the matter remanded to the trial court for resentencing consistent with section 1170, subdivision (b).

19. On page 17, the paragraph beginning on page 16, delete the sentence that begins with "If the aggravating circumstances would have been proved to the respective standards …" and the remainder of that paragraph, and replace it with the following:

If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b).

20. On page 18, in the eighth sentence of the first partial paragraph, beginning "It then sentenced defendant …," the text "MCR0603302" is modified to read "MCR063302."

There is no change in the judgment.

As the nonpublished opinion filed on June 30, 2022, in this matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c)(1) and (c)(5), it is ordered that the opinion be certified for publication in the Official Reports.

HILL, P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.

4.